SHUPE et v
FRANKLIN SAVINGS & LOAN ASSN et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1344. Decided Feb 4, 1936

Craighead, Cowden, Smith & Schnacke, Dayton, for plaintiffs.

Scharrer, Scharrer, McCarthy & Hanaghan, Dayton, for defendants.

## OPINION

By THE COURT

The case comes into this court on plaintiff's appeal from the Court of Common Pleas of Montgomery County.

By agreement of counsel the cause is submitted in this court on the transcript of the evidence taken in the court below. Plaintiff seeks to have cancellation of a running stock account in the amount of approximately $2000.00 evidenced by pass book No. 3842, and issued August 21, 1931. In place thereof she desires to have restored to her her certificate of deposit totaling the same amount and which was cancelled at the time the transfer was made to the running stock account. Plaintiff claims constructive fraud in that at the time the transfer from the C, D. was made to the pass book running stock account, the defendant association failed to advise her that she was changing her position from a creditor to a stockholder. The defendant in its answer denies all imputations of fraud.

The plaintiff in the trial court submitted one witness besides herself, to-wit, Robert E. Cowden of the firm of Craighead, Cowden, Smith & Schnacke. Mr. Cowden is. a very close relative by marriage of the plaintiff.

The first business relation between the plaintiff and the association took place in 1927. Mrs. Shupe is the widow of Dr. Shupe, the latter having died about 1927. Mrs. Shupe was the administratrix and settled up the estate in a very short time. Mr. Cowden was her attorney. Shortly thereafter the plaintiff sold a piece of real estate coming to her from her deceased husband, to a Mrs. Powell, the latter borrowing $3000.00 from The Franklin Savings and Loan Association in order to pay the full amount of purchase price. The attorneys for the Association questioned the title by reason of the fact that the full year had not expired following the appointment of the administratrix, and that the Probate Court had not at that time settled the account.

By agreement it was arranged that a certificate of deposit in the sum of $3000.00 should be placed in escrow with Mr. Cowden to be held by him pending the settlement of the account in the Probate Court, and if no claims were presented within the year and the account finally settled, the certificate was then to be returned to Mrs. Shupe. Mr. Cowden made specific demands that there be issued to him a certificate of deposit, and not a stock certificate or running stock account. At the expiration of the year, in conformity to the arrangement the escrow was released and the certificate of deposit returned to Mrs. Shupe. At that time she desired to have a thousand dollars in cash, which was paid her. Mr. Cowden in the presence of officials of the Building and Loan told them that he had advised her to take a certificate of deposit for the amount not drawn out, and in accordance with his suggestion a $2000.00 certificate was issued and turned over to Mrs. Shupe. This transaction occurred about November 1st, 1927. As far as the record discloses Mr. Cowden was not consulted further until sometime in the year 1932. On or about August 21, 1931, Mrs. Shupe went to the office of the defendant Association for the purpose of ascertaining if arrangements might be made whereby she could make withdrawals from time to time. This question can best be understood by quoting from the petition:

"Plaintiff says that on or about said date of August 21, 1931, she went to said Sav-

ings and Loan Association and conferred with them about the matter of her certificate of deposit, and that she understood and believed at that time, and stated to the officers and agents of said Association, that she could not make partial withdrawals from time to time upon said certificate of deposit, but that if she had it transferred to a book account she could make such withdrawals on the same from time to time as said Loan Association permitted, and to which she would be entitled, without affecting the balance of her account or the interest which would accrue thereon. Plaintiff says that she did not at that time consult legal counsel about said matter, but relied entirely upon the duties and obligations which said Savings and Loan Association and its officers and agents owed to her as a depositor.

"Plaintiff says that thereupon the said The Franklin Savings and Loan Association without making any explanation to her or advising her that they were changing her rights in any respect, and in violation of the express conditions under which said original certificates of deposit were issued, had her account cancelled as a certificate of deposit, after requiring her to endorse and deliver said certificate to it; and issue to her a book account, which is now known and designated by said Savings and Loan Association as running stock account No. 3842, and upon said account under said date of August 21, 1931, credited the proceeds of said certificate of deposit and accrued interest in the amount of $2046.66."

Plaintiff in her testimony supports this allegation of the petition with some additional detail.

She was unable to give the name of the particular employe that she talked with on this August 21st, nor was his appearance sufficiently impressed upon her memory that she could describe him.

Among other things she said that after stating her understanding as to the certificate of deposit and desire to change whereby she could withdraw from the account at irregular intervals, this employe said nothing but produced a card for her to sign and thereafter transferred the account to book No. 3842. The plaintiff endorsed her certificate and delivered it to the association. The pass book on the second page in large type has the words, "RUNNING STOCK ACCOUNT." The card which Mrs. Shupe signed on August 21, 1931, was a subscription for stock in the Association.

A second card signed on the back by Mrs. Shupe and her son Fred H. Shupe, provided that the account should be a joint account. The reverse side of this card was the same as the card signed by Mrs. Shupe subscribing for stock.

Plaintiff, Mrs. Shupe, made three withdrawals from the account as follows: October 1, 1931, $11.36; July 8, 1933, $9.66; August 4, 1933, $10.00. The receipts signed by her, all of which were introduced in evidence as exhibits, contained in very large letters in the center of the receipt the following:

"RUNNING STOCK ACCOUNT No. 3842."

In cross-examination Mrs. Shupe testified that she had had for a number of years accounts in two other building and loan associations and both were running stock accounts. The defendant brought this evidence into the record for the purpose of disclosing that Mrs. Shupe had some familiarity with "running stock accounts."

Considering the record as a whole we are unable to conclude that Mr. Cowden's advice to Mrs. Shupe, followed by his talk and arrangement with the officers of the defendant association, in effect that she should have a certificate of deposit, has any bearing on the question of constructive fraud sought to be raised under the petition.

After the new certificate for $2000.00 was given to Mrs. Shupe she thereafter was in absolute control of such certificate and free to handle as she might desire. If it has any effect it would be against the present contention of Mrs. Shupe in that if she remembered the advice she would know that Mr. Cowden suggested certificates of deposit and not running stock account.

We know of no reason why a certificate of deposit might not have partial withdrawals endorsed thereon, but it may be that this was contrary to express provisions of the certificate.

In any event such was the understanding of Mrs. Shupe as set out in her petition, and this is stated as a positive fact in the answer. No evidence was presented to the contrary. Under the issues and evidence we must accept it as a fact. It appears from the record that Mrs. Shupe could and did withdraw amounts from her book deposit. This was the feature which she desired. It is highly probable that she may not have understood the legal significance of what she received in return for her certificate. There is no evidence that the

Association handled accounts in any other form. Hence it was either retain her certificate of deposit or accept the running stock account. No claim is made of any misrepresentation through which it might be shown there was any intentional fraud.

May it be said that constructive fraud arises under the facts as disclosed in the record? We are unable to so conclude. In addition to the very able briefs of counsel we have had the benefit of the well considered opinion of the trial court. We agree with the judgment in the court below.

Plaintiff's petition will be dismissed at her costs.

Exceptions will be allowed.

Entry may be drawn in accordance with the above opinion.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.